IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | HONORABLE RICHARD G. ANDREWS |
| | : | |
| v. | : | CRIMINAL NO. 14-00013-RGA-9 |
| | : | |
| DESHAWN GROCE | : | |

BRIEF OF DEFENDANT DESHAWN GROCE IN OPPOSITION TO UNITED STATES'
MOTION FOR PROTECTIVE ORDER

Rocco C. Cipparone, Jr., Esquire
*LAW OFFICES OF ROCCO C. CIPPARONE, JR.*
203-205 Black Horse Pike
Haddon Heights, NJ 08035
(856) 547-2100
www.cipparonelaw.com

*Electronically Filed*

## STATEMENT OF FACTS

Defendant Deshawn Groce was arraigned on March 21, 2014.  Defense counsel requested complete discovery from the government by letter dated April 3, 2014.  On April 7, 2014, United States Attorney Mark Lee, Esquire, advised defense counsel that discovery was ready to be produced but that the United States would seek a protective order before production and asked for defense counsel's consent to such an Order.  Mr. Lee outlined the conditions under which he would seek such Order.  After several good-faith discussions between defense counsel and the government, it became clear that an agreement regarding a protective order could not be reached.  The United States therefore filed its motion for a protective Order under seal on April 18, 2014.

## LEGAL ARGUMENT

Defendant's primary objection to the United States' motion is that it seeks to prohibit Mr. Groce from having meaningful access to the discovery and evidence that the United States intends to offer against him at trial, including recorded telephone conversations obtained by wiretap and transcripts thereof, and witness statements which are to be provided to defendants pursuant to the Jencks Act, 18 U.S.C. § 3500.  The United States takes the position that "allowing the incarcerated Defendants to retain copies of this material would endanger the safety of confidential sources and/or Government trial witnesses."  Government motion at p. 2.

Defendant Groce was recently relocated from FDC Philadelphia to a state facility in Pennsylvania, the George W. Hill Correctional Facility in Delaware County.  However, the procedure implemented at FDC Philadelphia is a model for other facilities and can be implemented in any facility.  It provides an appropriate balance between the need for protection of sensitive information and a defendant's right to review the evidence against him and assist in his own defense.  Defense counsel has conferred with Marisa Davidson, Esquire, at FDC

2

Philadelphia and has confirmed the procedure by which inmates are provided access to their

discovery at that facility, which is as follows:  Although inmates have regular access to

computers on which they can send and receive Corrlinks email and print out labels for regular

mail, those computers do not have disc drives and inmates are not able to review discovery discs

using those computers.  Each unit has a separate laptop computer specifically designated for

discovery review and it is from those laptop computers—and those laptop computers only—that

inmates are able to review discovery materials which defense counsel provides in disc format.

Those designated laptop computers are "read-only" and have no network access and no print

capabilities.  Inmates can access and review materials from those computers but cannot share the

materials thereon with any other inmates, or with anyone outside the prison.  Inmates are strictly

monitored by FDC Philadelphia staff while using these laptops.

It is therefore apparent that the procedures in place at FDC Philadelphia are sufficiently

secure to alleviate the United States' concerns regarding the safety of witnesses and

dissemination of the discovery materials in the prison facility.  Such procedures completely

prevent Mr. Groce from printing, sharing, e-mailing or otherwise disseminating any discovery

material, and when he is viewing such on the designated laptop computer, he is alone and

monitored by prison staff.  There is simply no opportunity or ability for Mr. Groce to disseminate

or share the information regarding witnesses as the United States contends.  Similar procedures

can be implemented at the facility where Mr. Groce is currently housed, or in the unlikely

situation in which such procedures cannot be made available at that facility, Mr. Groce can of

course be transferred back to FDC Philadelphia in order to enjoy his constitutionally protected

right to assist in his own defense by having access to the evidence which are to be offered against

him.  The Court (as discussed below) has the authority to dictate proper procedures to protect the

defendant's constitution rights by for example ordering the provision of a laptop at George W. Hill at either government or CJA expense that has a read only drive (defense counsel has worked with Cornerstone IT to provide such services pursuant to the Criminal Justice Act in the past in much more highly sensitive cases such as the Fort Dix terrorism case, to balance those concerns of the government yet to preserve defendant full access to discovery).

Procedures like those in place at FDC Philadelphia provide more than adequate protection for the United States' concerns.  It is of course true that by reviewing the discovery, Mr. Groce will have knowledge of the identities of the witnesses against him, however, the same would be true if Mr. Groce were to review the discovery in the presence of defense counsel as the United States suggests.  Preventing Mr. Groce direct access to his discovery will not prevent him from knowing the identity of his accusers (as indeed he is constitutionally entitled to this information), however it will impose an onerous burden on Mr. Groce's CJA counsel to spend literally hundreds of hours at the facility in which Mr. Groce is incarcerated reviewing the voluminous discovery with Mr. Groce.  No additional safeguards are accomplished by the United States' insistence upon these restrictive conditions.  See, e.g., *Muhammad v. Butler,* 655 F.Supp. 1470, 1472 (D.N.J. 1987) (prisoner's due process rights were violated when he was denied access to statement of his accuser and prison's stated rationale that the denial was motivated by a desire "to preserve/protect security" was "unpersuasive" given that prisoner already knew identity of his accuser).

When the United States' request is viewed against the applicable law regarding detained defendants' access to discovery materials, it is clear that Mr. Groce's rights under the confrontation clause of the Sixth Amendment to the United States Constitution and his constitutional due process rights are directly implicated by these issues and that anything short of

providing him with full access to the discovery would be a violation of those rights.

Standards applicable to pretrial detainees and their access to trial preparation materials require the court to order direct production of discovery materials to Mr. Groce. The United States Supreme Court addressed the standard applicable to pretrial detainees in *Bell v. Wolfish,* 441 U.S. 520, 535-537 (1979), holding that restrictions cannot be penal in nature due to the pretrial detainees' status and that the conditions of detention cannot violate a defendant's constitutional rights:

> [U]nder the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law. A person lawfully committed to pretrial detention has not been adjudged guilty of any crime. He has had only a "judicial determination of probable cause as a prerequisite to [the] extended restraint of [his] liberty following arrest." And, if he is detained for a suspected violation of a federal law, he also has had a bail hearing. **Under such circumstances, the Government concededly may detain him to ensure his presence at trial and may subject him to the restrictions and conditions of the detention facility so long as those conditions and restrictions do not amount to punishment, or otherwise violate the Constitution.**

*Bell,* 441 U.S. at 535-537 (emphasis added, internal citations omitted).

Relying on *Wolfish,* the U.S. District Court for the District of Columbia recognized the importance of defendants being able to review the evidence against them as they prepare for trial:

> The Court is concerned primarily that the defendants not be deprived of their Constitutional rights. "There is no iron curtain drawn between the Constitution and the prisons of this country." As a result, while inmates, even pretrial detainees, may have their liberties curtailed as a natural incidence of detention, the "opportunity to consult counsel must be preserved." Moreover, any consultation with counsel is rendered meaningless unless the defendants and their attorneys have an opportunity to review the evidence. In addition, the defendants in this case are in a unique position because they have not been convicted of a crime.

*U.S. v. Medina,* 628 F.Supp.2d 52, 54 (D.D.C. 2009) (internal citations omitted).  The United States' suggestion that defense counsel sit with Mr. Groce while he reviews the voluminous discovery in this case which includes intercepted telephone conversations obtained from a wiretap of 60 days' duration, transcripts of some of those conversations, supporting applications and affidavits incident to those wiretaps, statements of witnesses, interview notes of agents, and impeachment material, is completely impractical and more importantly insufficient to afford the defendant his constitutional access to discovery.  Defense counsel does not possess the availability that such a procedure would require.  In addition, such a procedure would impose an unnecessary cost on the United States which is of course bearing the cost of Mr. Groce's CJA counsel.  Mr. Groce's meetings with his counsel will be "rendered meaningless", *Medina*, 628 F.Supp.2d at 54, if he is not afforded the opportunity to review the discovery *in advance* of those meetings so that consultation with counsel will be productive and fruitful.

If the Court finds that additional safeguards are necessary within the prison facility, the Court has the authority to include such provisions in its Order.  The *Medina* court held that the court had the authority to fashion appropriate relief, as an exception to the general autonomy granted to correctional facilities:

> Merely because the administrators at the jail are generally in a better position to make classification decisions and decisions regarding day-to-day operations in the jail does not mean that this Court is without jurisdiction to grant pretrial detainees relief when the actions of a correctional facility violate the Constitution or impede the Court from administering justice. . . . [T]he defendants have raised claims based on the Constitution and their status as pretrial detainees in a criminal case. **Without ensuring that the defendants have access to their counsel and to discovery, any convictions that result from proceedings in this Court could be invalidated.** Accordingly, the Court is certainly not prohibited from remedying constitutional violations that infect its administration of criminal justice.

*Medina*, 628 F.Supp.2d at 55 (emphasis added).  *See also Wolfish v. Levi,* 573 F.2d 118, 133 (2d Cir.1978) ("[O]ne of the most serious deprivations suffered by a pretrial detainee is the curtailment of his ability to assist in his own defense."), rev'd on other grounds, *Bell v. Wolfish,* 441 U.S. 520 (1979).

As in *Medina*, constitutional rights are implicated in the instant case. In *Medina*, the defendants' Sixth Amendment right to counsel was being infringed upon. Here, Mr. Groce's due process rights and his Sixth Amendment rights to be informed of the nature and cause of the accusations against him and to confront the witnesses against him are being constrained by the United States' attempt to deny him access to the evidence against him, including the statements of the United States' witnesses and wiretap evidence.  In order for Mr. Groce's constitutional rights to be meaningful, he must have an opportunity to inspect the evidence against him and to discuss its implications with his counsel.

Both the discovery rules and the *Jencks* Act were enacted for precisely this reason. To hold that defendants cannot access this material and that it is only available to their attorneys would turn the confrontation clause on its head. See, e.g., *Palermo v. United States,* 360 U.S. 343, 362-363 (1959) (recognizing the constitutional underpinnings of the *Jencks* Act).

Rule 16 of the Federal Rules of Criminal Procedure specifically provide that discovery shall be provided to "the defendant," not just to his or her counsel.  See F.R.Cr.P. 16.  The *Jencks* Act also explicitly provides for the direct delivery of *Jencks* Act material to the defendant.  18 U.S.C. § 3500(b) provides:

> After a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement (as hereinafter defined) of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified. If the entire

contents of any such statement relate to the subject matter of the testimony of the witness, the court shall order it to be delivered **directly to the defendant** for his examination and use.

(emphasis added).

The express language of the Rule and the *Jencks* Act both give defendants a right to direct access to discovery and *Jencks* Act materials, not merely a right to have the materials given to their counsel. Under principles of statutory interpretation, the express language ends the inquiry into the rule or statute's meaning:

> When interpreting a statute ... we must turn first to the language of the statute itself. When the words of a statute are unambiguous, then, this first canon is also the last: judicial inquiry is complete.

*Delalla v. Hanover Ins.,* 660 F.3d 180, 185 (3rd Cir. 2011). See also *Birdman v. Office of the Governor,* 677 F.3d 167, 176 (3rd Cir. 2012) ("Our inquiry into the meaning of a statute begins with its plain language").

Secondary principles of statutory interpretation also compel the Court to determine that the defendants have a right to direct access to discovery materials:

> Our role is to give effect to Congress's intent, which we assume is expressed in the ordinary meaning of the statutory language. *Disabled in Action of Pa. v. Se. Pa. Transp. Auth.,* 539 F.3d 199, 210 (3d Cir.2008). In analyzing whether the statutory language is unambiguous, "we take account of 'the specific context in which that language is used, and the broader context of the statute as a whole.' " *Id.* (quoting *In re Price,* 370 F.3d 362, 369 (3d Cir.2004)). We also consider the "overall object and policy of the statute, and avoid constructions that produce odd or absurd results or that are inconsistent with common sense."

*Long v. Tommy Hilfiger U.S.A., Inc.,* 671 F.3d 371, 374-375 (3rd Cir. 2012).

The only sound interpretation would be that Congress, and the Advisory Committee that drafted the Federal Rules, intended for defendants to have direct access to discovery and *Jencks* Act material.  It is the defendant who is familiar with the factual nuances of the charges against

8

him and his defense, and it is his eyes that best can evaluate the witness statements and

determine whether they are useful to his defense.  A defendant is in the best position to listen to

the intercepted conversations of either himself or his codefendants and to place them in their

proper context for defense counsel in assisting the defense.  Meaningful assistance requires

review and re-review of discovery materials on a sustained basis by the defendant himself.  It

requires reflection, constant thought and analysis.  It requires comparison and juxtaposition of

materials to notice inconsistencies or beneficial combinations of potential evidence.  Only

sustained and direct access to the discovery and evidence by Mr. Groce will afford him that

constitutionally protected right and due process.  Defense counsel reading to him is no adequate

substitute.  To hold otherwise would be "inconsistent with common sense."  *Long,* 671 F.3d at

375.

Release of the discovery materials directly to Mr. Groce is also in harmony with the

purpose and "overall object and policy" of the *Jencks* Act.  *Long,* 671 F.3d at 375.  The Third

Circuit has recognized that defendants are in a unique position to evaluate the evidence against

them from a factual perspective:

> The purpose of requiring the delivery to a defendant of a prior
> statement 'which relates to the subject matter as to which a witness
> has testified' is not solely to provide him a means of obtaining
> information divulged by the witness's testimony, but to give him an
> opportunity to use it as he deems fit for trial purposes. 'Whether
> the statements may be useful for purposes of impeachment is a
> decision which rests, of course, **with the defendant himself.**'

*United States v. Meisch,* 370 F.2d 768, 772 (3rd Cir. 1966) (emphasis added).  A defendant

cannot make the decision as to the usefulness of the statement at trial if he is not given an

opportunity to inspect it.  A lawyer who is reviewing discovery in a vacuum then trying to

summarize it for a client may miss things that only the defendant would initially be able to know

are significant to a competent defense.

It is clear that defendants are entitled to direct access to discovery materials. No other result is possible when the statute's plain language, dictates of common sense, and the statute's purpose are considered. The fact that Mr. Groce is detained pretrial must not effect that entitlement. To permit such hindrance of Mr. Groce's constitutional rights based solely or at all on his status as a pretrial detainee would violate his due process rights and would amount to a punitive measure as the Supreme Court prohibited in *Bell v. Wolfish*, 441 U.S. 520, 535 (1979).

In light of the constitutional concerns implicated by the United States' request, this Court should deny the United States' request for a protective Order and hold that Mr. Groce is entitled to access and review the discovery materials. If the Court finds that safeguards beyond those already in place at the prison facility are required, such may be ordered, but to deny Mr. Groce any access to his discovery other than during meetings with counsel would make it impossible for Mr. Groce to meaningfully participate in his own defense. A simple transfer to the FDC Philadelphia, or providing minimal expense for a read only laptop, would solve the problem if the procedure is not in place at the Hill facility.

Moreover, the United States' rationale in support of the requested restrictions fails when it is examined, for two reasons. First, the United States' claim that "the Defendants have a strong incentive to disseminate the documents" and that "it would be nearly impossible to monitor the Defendants' actions while incarcerated pending trial to detect any such sharing of the material" cannot trump Mr. Groce's constitutional right. Second, it is possible to monitor their access and prevent dissemination – it happens every day at FDC Philadelphia, and the Court has the authority to oversee such by crafting an Order. Third, the United States' repeatedly equates Mr. Groce's access to discovery materials with Mr. Groce's knowledge of the cooperating

witnesses' identities—in other words, the United States implies that if the Protective Order is put in place and Mr. Groce cannot access his discovery materials, Mr. Groce will not discover those identities.  That conclusion is completely inaccurate because Mr. Groce will inevitably learn of the identities of the witnesses against him, whether through a review of the discovery materials on a designated prison-issue laptop or through a review of the discovery materials with defense counsel.  Therefore any argument that the witnesses' identities will somehow be exposed to a greater risk of disclosure should Mr. Groce be granted access to his discovery must fail.  The only thing that will be accomplished by limiting Mr. Groce's access to discovery is infringement on his constitutional right to assist in his defense and prepare for trial.  A protective order limiting further disclosure and how Mr. Groce can access the discovery will satisfy any of the government's concerns and will protect Mr. Groce's rights.

In light of the compelling constitutional implications of restricting Mr. Groce's access to the discovery materials, and in light of the lack of adequate justification given by the United States for requesting such restrictions, it is respectfully requested that the United States' Motion for a Protective Order be denied.

Respectfully Submitted,

 /s/ Rocco C. Cipparone, Jr.
Rocco C. Cipparone, Jr., Esquire
Dated: May 6, 2014                                      Attorney for Defendant Deshawn Groce

<u>CERTIFICATE OF SERVICE</u>

I, Rocco C. Cipparone, Jr., hereby certify that a copy of the within Motion and proposed

Order was served upon the following persons through the Court's electronic filing system:

>       Mark M. Lee, Assistant U. S. Attorney
>       U.S. Attorney's Office
>       The Nemours Building
>       1007 Orange Street, Suite 700
>       P.O. Box 2046
>       Wilmington, DE 19899-2046

A copy was sent to defendant Deshawn Groce by mail.

>                                          /s/ Rocco C. Cipparone, Jr.
>                                          Rocco C. Cipparone, Jr., Esquire

12